IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BELINDA PARKER,<br>   on behalf of herself and all others,<br>   similarly situated,<br><br>                  Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br>   a foreign corporation,<br><br>                  Defendant. | Case No.: 8:12-cv-110-JSM-TBM<br><br><br><br>CLASS COMPLAINT<br>(Unlawful Debt Collection<br>Practices) |

**DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S DISPOSITIVE
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS COMPLAINT**

Defendant, Midland Credit Management, Inc. ("MCM"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff's Amended Class Complaint ("Amended Complaint"). As set forth in MCM's supporting Memorandum, filed contemporaneously herewith, Plaintiff's Amended Complaint should be dismissed because it fails to state a claim against MCM under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, based on the single notification letter that MCM sent to Plaintiff in December 2010 that it was expressly required to send under the Florida Consumer Collection Practices Act.

WHEREFORE, MCM requests that its Dispositive Motion To Dismiss be granted.

Respectfully submitted this 14th day of May, 2012.

1

2

/s/ *J. Anthony Love*
James B. Thompson, Jr.
FL Bar No. 872938
THOMPSON GOODIS
700 Central Avenue, Fifth Floor
St. Petersburg, Florida  33701
Telephone:  (727) 823-0540
Fax:  (727) 823-0230
Email: jthompson@thompsongoodis.com

J. Anthony Love
FL Bar No. 67224
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5100
Email:  TLove@kslaw.com

**Attorneys for Midland Credit Management, Inc.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| BELINDA PARKER, )<br>    on behalf of herself and all others, )<br>    similarly situated, )<br> )<br>            Plaintiff, ) Case No.:  8:12-cv-110-JSM-TBM<br> )<br>        v. )<br> )<br>MIDLAND CREDIT MANAGEMENT, INC., )<br>    a foreign corporation, )        CLASS COMPLAINT<br> )        (Unlawful Debt Collection<br>            Defendant.                    )        Practices) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S
DISPOSITIVE MOTION TO DISMISS**

Defendant, Midland Credit Management, Inc. ("MCM"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum in Support of its Dispositive Motion To Dismiss.  As discussed below, MCM's motion should be granted and Plaintiff's Amended Class Complaint ("Amended Complaint") should be dismissed.

**INTRODUCTION**

Plaintiff initiated this case in December 2011 over two letters that MCM sent to Plaintiff, one in December 2010 and one in March 2011. (Doc. 1.)  The original complaint asserted violations of the Florida Consumer Collection Practices Act ("FCCPA") and the federal Fair Debt Collection Practices Act ("FDCPA") with regard to both letters.  MCM challenged the original complaint by filing a Rule 12 motion seeking dismissal of the entire case. (Doc. 12.)  Rather than address that motion, Plaintiff responded on May 4, 2012, by

3

filing her Amended Complaint (Doc. 22), which (1) abandons all FCCPA and FDCPA claims related to the March 2011 letter, (2) abandons the FCCPA claims related to the December 2010 letter, and (3) adds a new claim under the FDCPA.  Thus, under the Amended Complaint, this case involves only the single letter that MCM sent to Plaintiff in December 2010 (the "December 2010 Letter," Exhibit A to the Complaint), which Plaintiff purports to bring as a class action under the FDCPA.

Plaintiff alleges that the December 2010 Letter violates two provisions of the FDCPA—Sections 1692e(11) and 1692g(a). (*See* Doc. 22.)  She asserts that the December 2011 Letter was an "initial communication" under the FDCPA, which triggered an obligation for MCM to provide certain disclosures under Sections 1692e(11) and 1692g(a). (*Id*., ¶¶ 61, 64.)  Plaintiff's theory, however, is not only unsupported by any case in this Circuit, it is contrary to long-standing principles of statutory construction.

The issue and facts are straightforward.  Plaintiff opened a credit card account with Capital One and charged over $28,000 that she failed to repay.  Midland Funding LLC ("Midland Funding") acquired the account from Capital One.  Upon acquiring the debt, Midland Funding (through its corporate affiliate, MCM), as required by the FCCPA (the Florida version of the FDCPA), sent Plaintiff the December 2010 Letter and notified her that Midland Funding had "received an assignment" of the account from Capital One.  The December 2010 Letter did not ask Plaintiff to send any money to MCM.  To the contrary, the letter expressly advised Plaintiff that "no collection efforts will occur on this account for at least 30 days from the date of this notice" and "this is not an attempt to collect a debt."

As a matter of law, the December 2010 Letter did not violate the FDCPA because it was expressly required by the FCCPA and it was not a communication "in connection with the collection of a debt" as required to trigger obligations under FDCPA Sections 1692e(11) and 1692g(a). To hold MCM liable under the FDCPA for sending a letter that was required by the FCCPA would, in effect, override and inadvertently preempt the FCCPA. Longstanding, black-letter law holds that courts should avoid such a result if at all possible. Accordingly, MCM's motion to dismiss should be granted.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that MCM attempted to collect on her Capital One credit card account ending in 7614. (Doc. 22, ¶ 10.) Plaintiff claims that MCM did so by sending her the December 2010 Letter (attached as Exhibit A to the Complaint), which she claims violates the FDCPA.[1]

In the December 2010 Letter, MCM is identified as the "Current Owner" of the account and Capital One as the "Original Creditor." (Doc. 22, Ex. A.) The December 2010 Letter contained the original Capital One account number, the new MCM account number, and the current account balance. (*Id*.) The letter stated that "[t]he purpose of this letter is to advise you that Midland Funding LLC is the new owner of the above-referenced account, and … MCM …, a debt collection company, is now the servicer of this obligation." (*Id*.)

The December 2010 Letter advised Plaintiff that Midland Funding had received an

---

[1] As this Court held last fall, the Court properly can consider the letter attached to the Complaint on this Rule 12 motion. *See Schreiber v. Ocwen Loan Servicing, LLC*, 2011 WL 6055425, n.2 (M.D. Fla. Oct. 17, 2011) (TILA case: "The Court may consider these [two] letters attached to the Complaint when ruling on the motion to dismiss.") (citing *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984)).

assignment of the account and that all further communications should be addressed to MCM. (*Id.*)  The letter explained that "[n]o collection efforts will occur on this account for at least 30 days from the date of this notice" and that "this is not an attempt to collect a debt."  (*Id.*)  The letter provided MCM's address and advised Plaintiff to forward the letter to her attorney if she had retained one.  (*Id.*)  Plaintiff does not allege that any collection efforts occurred prior to the expiration of the thirty-day period set forth in the December 2010 Letter.  (*See* Doc. 22.)  In other words, the only alleged "collection" activity she complains of is the act of sending the December 2010 Letter.

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its own face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009) (internal quotations omitted); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (stating that a complaint should be dismissed if the allegations do not plausibly suggest a right to relief).  As discussed below, Plaintiff's theory of recovery is not "plausible."  Consequently, MCM's motion to dismiss should be granted.

**I.   THE LEAST SOPHISTICATED CONSUMER STANDARD PROHIBITS BIZARRE AND IDIOSYNCRATIC INTERPRETATIONS OF THE FDPCA SUCH AS THE ONE PROPOSED BY PLAINTIFF IN THIS CASE.**

The Eleventh Circuit has held that FDCPA Section 1692 claims are to be evaluated using the "least sophisticated consumer" standard.  *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010).  In adopting this standard, the *Jeter* court reasoned that the FDCPA

6

best protects consumers by adopting a definition "that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls." *Id.* (quotations omitted). "The least sophisticated consumer standard is an objective test, so whether or not a specific plaintiff was misled by a debt collector's representation is irrelevant to liability under the FDCPA. The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194.

The least sophisticated consumer standard is designed to protect vulnerable consumers while simultaneously preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.*; *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) ("least-sophisticated consumer" standard is an objective test). Applying the least sophisticated consumer standard, the Court must determine whether the language of the letter had the tendency to "mislead the least sophisticated recipient of a debt collector's letters" when evaluating a violation of the FDCPA premised upon deception. *Jeter*, 760 F.2d at 1175. As discussed below, Plaintiff seeks to have this Court apply a "bizarre and idiosyncratic" interpretation under the circumstances here by asking it to find that MCM's compliance with Florida law was simultaneously a violation of the FDCPA. Such a "Catch-22" outcome is neither required nor warranted under the circumstances.

**II.     AS A MATTER OF LAW, THE DECEMBER 2010 LETTER WAS NOT A "COMMUNICATION IN CONNECTION WITH THE COLLECTION OF A DEBT" AND, THEREFORE, DID NOT TRIGGER THE REQUIREMENTS OF SECTIONS 1692e(11) AND 1692g(a) OF THE FDCPA.**

**A.     Three Statutory Provisions—Section 1692e(11) And 1692g(a) Of The FDCPA And Section 559.715 Of The FCCPA—Are At Issue.**

The legal issue is straightforward:  Only an "initial communication" from a debt collector "in connection with the collection of any debt" triggers certain obligations under Sections 1692e(11) and 1692g(a) of the FDCPA.  Because the December 2010 Letter was not such an "initial communication" "in connection with the collection of any debt," it did not trigger those FDCPA obligations.  The resolution of that straightforward legal issue, however, requires an analysis not only of those two FDCPA provisions, but also of FCCPA Section 559.715.  When those three provisions are analyzed together, the reasons for the December 2010 Letter, and the resulting lack of merit in Plaintiff's case, become clear.

**1.     The Relevant FCCPA Provision**

Simply stated, MCM sent Plaintiff the December 2010 Letter because Florida law required it to do so.  The FCCPA contains a provision that speaks specifically to the ability of assignees of accounts—such as Midland Funding here—to collect on those accounts.  The FCCPA allows assignees to collect, but requires that they first follow strict protocols.  Specifically, Section 559.715 of the FCCPA provides:

> This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt.  However, *the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt*.  The assignee is a real party in interest and may bring an action to collect a debt that has been assigned to the assignee and is in default.

8

Fla. Stat. § 559.715 (emphasis added). Thus, as the text of Section 559.715 makes clear, MCM was required to send Plaintiff the December 2010 Letter.

### 2. The FDCPA Provisions At Issue

The two FDCPA provisions that Plaintiff claims MCM violated require, as a predicate to liability, that the communication be part of an actual effort to collect the debt. First, Section 1692e(11), captioned "False or Misleading Representations" and also known as the "mini-Miranda" provision of the FDCPA, requires a debt collector to disclose in its "initial written communication" that it "is attempting to collect a debt and that any information obtained will be used for that purpose":

> A debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (11) The failure to disclose in the initial written communication with the consumer … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose …

15 U.S.C. § 1692e(11) (emphasis added).

Section 1692e aims, as the provision explicitly states, to prevent debt collectors from making a "false, deceptive, or misleading representation" "in connection with the collection of a debt." In other words, conduct by a debt collector other than in connection with the collection of a debt does not implicate the mini-Miranda obligation. The courts have agreed with this common-sense interpretation. *See, e.g.*, *Francis v. GMAC Mortgage*, 2007 WL 1648884, *3 (E.D. Mich. June 6, 2007) ("While § 1692e(11) applies to 'communications,' § 1692e generally prohibits 'false, deceptive, or misleading representation or means *in*

9

*connection with the collection of a debt*.'") (emphasis added); *Cohen v. Beachside Two-I Homeowners' Ass'n*, 2006 WL 1795140, *10 (D. Minn. June 29, 2006) ("Section 1692e(11) concerns communications with consumers that allegedly owe a debt, and attempts to ensure that those communications clearly convey that they are from a debt collector and are an attempt to collect a debt.").

Likewise, the FDCPA's validation notice requirement of Section 1692g(a) is triggered only after the "initial communication with a consumer in connection with the *collection* of a debt." 15 U.S.C. § 1692g(a) (emphasis added).  Section 1692g(a) provides:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

### B. The December 2010 Letter Was Not "In Connection With The Collection Of A Debt" And, Therefore, Did Not Violate The FDCPA.

A reading of the December 2010 Letter plainly reveals that it was not sent in connection with the collection of any debt and, therefore, did not violate the FDCPA. Indeed, it clearly was sent to comply with FCCPA Section 559.715. It is settled law that only communications "in connection with the *collection* of any debt" fall within the ambit of the FDCPA. *Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388 (7th Cir. 1998) (emphasis added). "Communications that do not seek to collect debts cannot be considered as debt collection activities." *Marshall v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 345988, *3 (E.D. Ark. Feb. 1, 2011).

Thus, letters from debt collectors that merely notify a debtor of the status of the debtor's account or seek additional information about the debtor's status do not constitute initial communications for purposes of triggering the validation notice requirement. *See, e.g., Bailey*, 154 F.3d at 390 (observing that the letter at issue did not "demand" any payment, but merely informed the plaintiffs about the current status of their account); *Buckley v. Bass & Assoc.*, 249 F.3d 678, 682 (7th Cir. 2001) (law firm's letter to debtor, which was not on its face a demand for payment, but which requested information as to whether debtor had filed for bankruptcy, was not an "initial communication").

Here, the December 2010 Letter did not constitute "an initial communication with a consumer in connection with the *collection* of a debt." 15 U.S.C. §§ 1692e(11), 1692g(a) (emphasis added). To the contrary, the letter expressly stated that it was *not* an attempt to collect a debt; it was simply the fulfillment of MCM's statutorily-imposed requirement under the FCCPA to advise Plaintiff that Midland Funding was now the owner of the Capital One

11

debt. *See* Fla. Stat. § 559.715. It would be manifestly unfair to hold MCM liable under the FDCPA simply because it was cautious in the December 2010 Letter to state that it was not an effort to collect a debt and was, instead, merely a notification that Midland Funding had acquired Plaintiff's debt.

This type of "notification" letter, with no demand for payment, does not constitute an "initial communication" under the FDCPA. Accordingly, the December 2010 Letter was not sent "in connection with the collection of any debt"—a threshold requirement for the application of Sections 1692e and 1692g(a). Plaintiff's Amended Complaint should, therefore, be dismissed. *See, e.g., Geiger v. Creditors Interchange, Inc.*, 59 Fed. Appx. 803, 804 (6th Cir. 2003) (affirming dismissal of Section 1692e(11) claim because the debt collector's letter was a notice sent in response to the debtor letter and was not a communication conveying information regarding a debt, thus dispensing with the requirement for notification language under Section 1692e(11)); *Buckley*, 249 F.3d at 682 (law firm's letter to debtor, which was not on its face a demand for payment, but which requested information as to whether debtor had filed for bankruptcy, was not an "initial communication" that triggered the notification requirements of the FDCPA); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1998) (affirming dismissal of Section 1692e(11) claim where letter to debtor concerning payoff amount for mortgage did not constitute an attempt to collect a debt and thus notification under Section 1692e(11) was not required); *Bailey*, 154 F.3d at 390 (the letter at issue did not "demand" any payment, but merely informed the plaintiffs about the current status of their account); *Francis*, 2007 WL 1648884,

*6 (holding that the "pertinent letters were not made 'in connection with the collection of a debt' under § 1692e and do not constitute 'communications' under § 1692e(11)").[2]

### C. Adoption Of Plaintiff's Theory Of Liability Would Create An Irreconcilable Conflict With The FCCPA And Result In The Preemption Of Section 559.715.

Significantly, Plaintiff's construction of the FDCPA, if adopted, would create an irreconcilable conflict with Section 559.715 of the FCCPA and, for all practical purposes, result in the preemption of that section. There is no basis in the law to allow such a result here; indeed, long-standing principles of statutory construction compel the opposite.

As assignee of Plaintiff's Capital One account, Midland Funding (through its servicer, MCM) sent the December 2010 Letter to comply with Section 559.715, which requires that "the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt." Fla. Stat. § 559.715. In other words, Midland Funding—or any assignee of an account that is subject to the FCCPA—cannot collect on that account until (1) 30 days following (2) the letter notifying the consumer that the assignee now owns the account.

Under Plaintiff's theory, however, a letter of the type sent to Plaintiff in December 2010 *always* violates the FDCPA because it supposedly is an "initial communication" for

---

[2] Furthermore, in addition to the fact that the December 2010 Letter was not sent "in connection with the collection of a debt" for purposes of Section 1692e, the other predicate to liability under that subsection—a "false, deceptive, or misleading representation or means"—is wholly absent as well. Absolutely nothing in the December 2010 Letter was "false, deceptive, or misleading"; MCM merely advised Plaintiff, pursuant to the obligations imposed by the FCCPA, that Midland Funding had received the assignment of Plaintiff's account, and that any future communications should be directed to MCM as servicer of the account for Midland Funding. *See* Doc. 22, Ex. A. Tracking the language (and requirements) of FCCPA Section 559.715, the letter truthfully stated that "[n]o collection efforts will occur on this account for at least 30 days from the date of this notice" and that "this is not an attempt to collect a debt." *Id.* Thus, the Section 1692e(11) claim fails for this alternative reason.

purposes of FDCPA Sections 1692g(a) and 1692e(11). But such a theory, if adopted, puts Midland Funding and other assignees in an impossible position and creates an irreconcilable conflict between the FDCPA and FCCPA. If MCM does not send the letter at all but, instead, sends a more conventional written or oral communication that actively attempts to collect the debt, then it will have violated FCCPA Section 559.715 because it tried to collect the debt without (1) notifying the consumer of the assignment and (2) waiting another 30 days after that notice before attempting to collect; on the other hand, under Plaintiff's theory, the informational letter, while compliant with the FCCPA (and, significantly, the Amended Complaint does not allege otherwise), nevertheless violates the FDCPA because it somehow constitutes an "initial communication."

Thus, Plaintiff is attempting to place Midland Funding (and other assignees of accounts that are subject to the FCCPA) in a classic "heads I win, tails you lose" situation where compliance with the federal statute violates the state statute, while compliance with the state statute violates the federal statute. In other words, Plaintiff says that the December 2010 Letter should have stated, among many other things, that MCM "was attempting to collect a debt" (Doc. 22, ¶ 24) even though MCM expressly disclaimed any such effort in the letter and, more importantly, FCCPA Section 559.715 expressly prohibited MCM from making any such effort until at least 30 days after the letter was sent. Plaintiff's theory thus creates an untenable Hobson's choice for Midland Funding and other account assignees in Florida, where the assignee can choose to comply with FCCPA Section 559.715 but, under Plaintiff's theory, violate the FDCPA, or it can choose to comply with the FDCPA but run the risk of violating FCCPA Section 559.715.

14

The only way that the federal and state statutes can be reconciled, and both be effective, is that the informational letter required by FCCPA Section 559.715 is not a "initial communication" and is not sent "in connection with the collection of [a] debt" for purposes of the FDCPA. That, of course, is the correct result anyway as detailed above, i.e., the proper interpretation of FDCPA Sections 1692e(11) and 1692g(a) is that the December 2010 Letter was not sent "in connection with the collection of the debt" such that the FDCPA is implicated. But that result also is completely consistent with the purpose behind FCCPA Section 559.715—the assignee expressly *cannot* collect on the debt until 30 days *after* the initial notification letter (here, the December 2010 Letter) is sent to the account holder. So the letter required by Section 559.715 *cannot* attempt "the collection of the debt," because any such attempt would violate that provision; hence, the conspicuously-located sentence at the bottom of the December 2010 Letter: "Although this communication is from a debt collector, this is not an attempt to collect a debt." Doc. 22, Ex. A.

In summary, if Plaintiff's theory of liability were adopted and MCM's December 2010 Letter—sent to comply with the FCCPA and expressly disavowing any effort to collect a debt—were deemed to violate the FDCPA, the result would be a preemption of FCCPA Section 559.715 by the FDCPA. It is, of course, black-letter law that federal preemption of state statutes is to be avoided where at all possible. *See, e.g., Teper v. Miller*, 82 F.3d 989, 993 (11th Cir. 1996) ("principles of federalism dictate that preemption should not be found unless preemption is "the clear and manifest purpose of Congress"); *In Re Bate*, 454 B.R. 869, 874 (Bankr. M.D. Fla. 2011) ("[T]he historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").

Likewise, it is well established that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).  Further, "[i]n reconciling conflicting statutes, the Court must first try to harmonize the statutes and give effect to both provisions." *U.S. v. Leal*, 2003 WL 21665126, *11 (M.D. Fla. Mar. 28, 2003) (citing *Jones v. State*, 813 So. 2d 22, 25 (Fla. 2002)).  Thus, traditional principles of statutory construction and preemption counsel reinforce the proposition that the December 2010 Letter, which complies with the FCCPA, did not violate the FDCPA.

## CONCLUSION

For the foregoing reasons, MCM respectfully requests that the Court grant its Motion To Dismiss and dismiss Plaintiff's Amended Complaint.

Respectfully submitted this 14th day of May, 2012.

    /s/  *J. Anthony Love*
James B. Thompson, Jr.
FL Bar No. 872938
THOMPSON GOODIS
700 Central Avenue, Fifth Floor
St. Petersburg, Florida  33701
Telephone:  (727) 823-0540
Fax:  (727) 823-0230
Email: jthompson@thompsongoodis.com

J. Anthony Love
FL Bar No. 67224
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5100
Email:  TLove@kslaw.com

17

**Attorneys for Midland Credit Management, Inc.**

## CERTIFICATE OF SERVICE

      I hereby certify that I presented the foregoing **DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S DISPOSITIVE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** to the Clerk of the Court for filing and uploading to the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's CM/ECF filing system or by mail to anyone unable to accept electronic filing.

Ian R. Leavengood
Christopher C. Nash
Leavengood & Nash
3900 First Street North, Suite 100
St. Petersburg, FL 33703

Heather M. Fleming
Marone Law Group PLC
P.O. Box 3042
St. Petersburg, FL 33731

Christopher Craig Casper
Nicole Casey Mayer
James, Hoyer, Newcomer & Smiljanich, P.A.
Suite 550
4830 W Kennedy Blvd
Tampa, FL 33609

This 14th day of May, 2012.

                                          /s/ *J. Anthony Love*
                                          J. Anthony Love