**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BELINDA PARKER,
*on behalf of herself and all others*
*similarly situated,*

                                       Case No.: 8:12-cv-110-T-30TBM

        Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.,     **CLASS ACTION (Unlawful**
*a foreign corporation,*                       **Debt Collection Practices)**

        Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S DISPOSITIVE MOTION TO DISMISS AMENDED**
**CLASS COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

**COMES NOW** Plaintiff, Belinda Parker (hereinafter, "Plaintiff" or "Parker"), by and

through her undersigned counsel, and pursuant to Local Rule 3.01(b), hereby files this

Response in Opposition to Defendant's Motion to Dismiss Amended Class Complaint and

Supporting Memorandum of Law, and in support thereof respectfully states the following:

**I.**      **INTRODUCTION**

This case arises from Defendant sending a form letter (hereinafter "Form Letter") to

Plaintiff to advise her under the Florida Consumer Collection Practices Act, Florida Statutes,

Chapter 559, (hereinafter "FCCPA") that Plaintiff's consumer Capital One credit card account

(hereinafter, the "Debt") had been purchased by and assigned to Midland Funding.  As more

specifically explained below, Midland Credit Management, LLC's (hereinafter, "Defendant")

Form Letter was both the initial communication Defendant sent to Plaintiff regarding the Debt,

and the the initial communication Defendant sent to Plaintiff in connection with the collection

of the Debt.  Defendant's Form Letter did not, however, contain consumer notices required

1

under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, (hereinafter "FDCPA"). Specifically, Defendant's Form Letter failed to advise Plaintiff of a portion of her "mini-Miranda"[1] rights afforded to her under the FDCPA, Section 1692e(11), namely that the Form Letter was an attempt to collect the debt and that any information obtained by Defendant would be used for that purpose.  Furthermore, Defendant failed to notify Plaintiff of her complete validation rights in either the Form Letter or in a subsequent written communication sent to Plaintiff within five days of the Form Letter, as required under the FDCPA, Section 1692g(a).

### A.  Summary of the Argument

Plaintiff's Amended Class Complaint states a cause of action for, *inter alia*, violations of the FDCPA because the Form Letter's plain language, read in ordinary English, and judged under the least sophisticated debtor standard, is both an initial communication under the FDCPA and was sent in connection with the collection of the Debt.  Defendant's claim that Section 559.715 of the FCCPA prohibits its compliance with the FDCPA notice provisions is incorrect as it is based on Defendant's flawed and unsupported interpretation of the FCCPA. Furthermore, to the extent that the Form Letter is required to provide consumers notice of assignment under the FCCPA, contrary to the Defendant's assertions, the Form Letter can be drafted to contain the required, complete[2] FDCPA notices without running afoul of the

---

[1]  Section 1692e(11) of the FDCPA is commonly known as a consumer's "mini-Miranda" notice for its similarity to the required notice that must be given to a criminal suspect to adequately and fairly protect his or her rights prior to any custodial interrogation that puts those rights and liberties in jeopardy.  *See Miranda v. Arizona,* 384 U.S. 436 (1966).  The FDCPA also requires timely notice and disclosure, namely that the consumer is informed that the "debt collector is attempting to collect a debt and that any information will be used for that purpose."  *See Foti v. NCO Financial Systems, Inc.,* 424 F. Supp. 2d 643, (S.D.N.Y. 2006); *Belin v. Litton Loan Servicing, LP,* No.8:06-cv-760-T-24-EAJ, 2006 WL 1992410, at *4-5, (M.D. Fla. July 14, 2006); 15 U.S.C. § 1692e(11); 15 U.S.C. § 1692a(2).

[2]  Defendant's Form Letter curiously includes some of the required FDCPA notices, namely one third of Section 1692e(11)'s "mini-Miranda" notice (i.e., this communication is from a debt collector) and two-fifths of Section 1692g(a)'s validation notice (i.e., (g)(1) the amount of the debt, and(g)(2) the name of the creditor to whom the debt was owed).  The rest of the FDCPA (e)(11) and g(a) required notices are intentionally left out of the Form Letter.

FCCPA's notice of assignment requirements under Florida Statute Section 559.715.  In other words, the Form Letter could be written to comply with both statutes that, when read together, give both statutes meaning and yet still provide both the federal and state consumer protections that were intended.

Finally, even if this Court finds the FDCPA's plain and unambiguous notice requirements, which are triggered by the initial communication sent to a consumer in connection with the collection of a debt, cannot be provided to Florida's consumer without simultaneously running afoul of the FCCPA's notice of assignment requirement under Florida Statute Section 559.715, Plaintiff still prevails.  This is because in the event of such an impermissible conflict between the FCCPA and the FDCPA, the FDCPA would preempt the FCCPA to the extent of such conflict.

In summary, Plaintiff's Amended Class Complaint states a cause of action for which relief can be granted under the FDCPA.  Defendant, by sending the Form Letter to Plaintiff in connection with collection of the Debt without also notifying Plaintiff of her complete "mini-Miranda" warning violated the FDCPA.  Furthermore, Defendant, by sending the Form Letter to Plaintiff in connection with the collection of the Debt without notifying Plaintiff of her complete validation notices – and failing to subsequently do so within five days of the Form Letter – further violated the FDCPA.  Plaintiff has alleged facts to support each required element of the aforementioned FDCPA claims.  Defendant's Motion to Dismiss, therefore, should be denied.

### B.     Relevant Background

Belinda Parker is a Florida resident who at all times relevant to this action lived in Pinellas County, Florida. (Amend. Class Compl., ¶ 3).  Defendant is a foreign for-profit

corporation existing under the laws of the State of Kansas that, itself and through its parents, subsidiaries, affiliates, employees and representatives, regularly collects debts allegedly owed another using the telephone or mail.  *Id.* at ¶¶ 5, 7, 10.  Defendant maintains its principle place of business in California.  *Id.* at ¶ 6.  On or about December 16, 2010, Defendant mailed Plaintiff a letter (herein, "Form Letter") that was Defendant's initial communication in connection with the collection with the Debt. *Id.* at ¶¶ 14-18, 19-23.  The Debt was incurred primarily for personal, family, or household use.  *Id.* at ¶ 12.  The Form Letter conveyed information to Plaintiff regarding the Debt.  *Id.* at ¶¶ 16, 27.  Defendant did not provide Plaintiff notice in the Form Letter that it was an attempt to collect the Debt and that any information would be used for that purpose. *Id.* at ¶¶ 24-25.  Defendant also did not provide Plaintiff notice in the Form Letter of her FDCPA validation rights. *Id.* at ¶¶ 28-30.  Finally, Defendant did not provide Plaintiff notice of her FDCPA validation rights within five days of the Form Letter. *Id.* at ¶ 32.

Defendant has moved to dismiss both counts in the Class Action Complaint, generally asserting that (1) the Form Letter Defendant sent Plaintiff was not an initial communication under the FDCPA, and that (2) the Form Letter was not sent in connection with the collection of a Debt as proscribed by the FDCPA.  Defendant's basis for this position is that because the Form Letter did not contain a demand for payment, it cannot be the predicate communication that invokes a consumer-recipient's FDCPA rights.  Defendant's rationale is further based on its unsupported and misguided belief that the Section 559.715 of the FCCPA requires notice of assignment of the Debt before a debt collector can engage in any collection activity.  Based on its incorrect interpretation of this provision, Defendant asserts that its Form Letter cannot qualify as an initial communication in connection with the collection of the Debt under federal

law, specifically the FDCPA §§ 1692e(11) and 1692g(a), because this would be "manifestly unfair" and place the Defendant in a "Catch-22." (Def. Mot. Dismiss at 7, 12).

Under Defendant's interpretation, it is impossible to read the statutes together and give both meaning consistent with the respective legislatures' intent without categorically excluding the FCCPA Section 559.715 notice of assignment of debt from both the FDCPA's definition of communication and an initial communication in connection with the collection of a debt. *Id.* Failing to so exclude, Defendant argues, would lead to the inadvertent preemption of the FCCPA. *Id.* The statutes, however, can and should be harmoniously read together to give effect to the congressionally stated purposes of each statute. And if the statutes cannot be so read together, preemption would not be unintended, but instead expressly required by both the FDPCA[3] and the FCCPA[4]. In either circumstance, Defendant's Motion to Dismiss should be denied.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim for Which Relief Can be Granted under Rule 12(b)(6)

To survive a motion to dismiss, a plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949. Dismissal is appropriate only if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. The purpose of the complaint is to apprise the defendant of "what the claim is and the grounds upon which it rests." *Harrison v.*

---

[3] 15 U.S.C. § 1692n.
[4] Fla. Stat. § 559.552.

*Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation omitted). A plaintiff need only do what is necessary to satisfy what the Eleventh Circuit called a "liberal pleading standard." *Id.*

"When considering a motion to dismiss [under Rule 12(b)(6)], the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, No. 07-80551-CIV, 2008 WL 214715, at *1 (S.D.Fla. Jan. 24, 2008). The court's examination is limited to the four corners of the complaint. *Keating v. City of Miami* , 598 F.3d 753, 761 (11th Cir. 2010);

    **B.**    **The Least Sophisticated Debtor Standard Applies in Evaluating Whether the Defendant's Form Collection Letter is a "Communication in Connection with the Collection of a Debt" and Whether the Form Letter Violates the FDCPA**

Plaintiff agrees with Defendant's assertion that the least sophisticated debtor standard applies when evaluating claims made under the FDCPA. (Def. Mot. Dismiss at 6-7). *See Jeter v. Credit Bureau, Inc.* 760 F.2d 1168, 1175 (11th Cir. 1985); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). Plaintiff also agrees with Defendant's assertions that the least sophisticated debtor standard is an objective test and one designed to protect the vulnerable while preventing "liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* Plaintiff, however, as discussed more specifically below, disagrees with Defendant's analysis and application of this standard to the plain, unambiguous meaning of the carefully chosen words Defendant placed in the Form Letter and subsequently sent to Plaintiff in connection with the collection of a debt. Plaintiff's interpretation of the Form Letter as being sent "in connection with the collection of a debt" is neither bizarre nor idiosyncratic, but instead an objectively reasonable—if not expected—

interpretation of the plain language of the Form Letter.  This interpretation would ring true not only to the least sophisticated debtor, but arguably to anyone who reads it.

### C.   The FDCPA is a Strict Liability Statute that Should be Liberally Construed to Protect the Consumer

Generally speaking, the FDCPA is a strict liability statute wherein a debt collector is responsible under most provisions of the FDCPA for a deviation from its requirements without regard to intent, knowledge or the willfulness of the violation.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010); *see also Kaplan v. Assetcare, Inc.,* 88 F. Supp. 2d 1355 (S.D. Fla. 2000); *Pollack v. Bay Area Credit Services, LLC*, No. 08-61101-Civ., 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009).  Furthermore, it is "an extraordinarily broad statute" and must be enforced "as Congress has written it."  *Frey v. Gangwish*, 970 F. 2d 1516, 1521 (6th Cir. 1992).  And because the FDCPA is remedial in nature, it should be liberally construed so as to give effect to its purpose.  *See Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008); *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

### III.   PLAINTIFF STATES A CLAIM AGAINST DEFENDANT FOR WHICH RELIEF CAN BE GRANTED UNDER THE FDCPA

Plaintiff alleges in her Amended Class Complaint that Defendant violated the FDCPA when it sent Plaintiff the Form Letter—Defendant's initial communication with Plaintiff in connection with the collection of the Debt—without providing Plaintiff notice required under two separate provisions of the FDCPA.

In analyzing the FDCPA, a court begins its "analysis with the text of the statute itself, which . . . is the most reliable indicator of congressional intent."  *McMillian v. Collection Professionals, Inc*. 455 F.3d 754 (7th Cir. 2006).  In *ordinary English*, a debt collector's letter

is unlawful if it runs afoul of the *plain language* of the FDCPA.  (emphasis added)  *See Heinz*

*v. Jenkins*, 514 U.S. 291, 294; 297 (1995) (the Supreme Court held that the congressional intent

should be implemented giving effect to the FDCPA's plain meaning in ordinary English).

After attempting to give meaning to the plain language of the FDCPA, if there are still

ambiguities in the meaning of the Act, it should be construed to give effect to the Act's stated

purposes.  *Jeter* 760 F. 2d at 1175.

Section 1691e of the FDCPA generally provides that "a debt collector may not use any

false, deceptive, or misleading representation *in connection* with the collection of any debt."

15 U.S.C. § 1692e (flush language) (emphasis added).   Without limiting this general

prohibition, Section 1692e(11) specifically provides the following conduct is a violation of

1692e:

> "The failure to disclose in the *initial* written *communication*
> with the consumer and, in addition, if the *initial*
> *communication* with the consumer is oral, in the *initial* oral
> *communication*, that the debt collector is attempting to collect
> a debt and that any information obtained will be used for that
> purpose . . . except that this paragraph shall not apply to a
> formal pleading made in connection with a legal *action*."

15 U.S.C. § 1692e(11) (emphasis added).

Furthermore, Section 1692g(a) also ties the noticing of a consumer's FDCPA rights as

it relates to the validation of consumer debts to a debt collectors "*initial communication … in*

*connection* with the collection of any debt."   15 U.S.C. § 1692g(a) (emphasis added).

Specifically, Section 1692g(a) provides:

> (a) Within five days after the *initial communication* with a consumer *in*
> *connection* with the collection of any debt, a debt collector shall, unless the
> following information is contained in the *initial communication* or the
> consumer has paid the debt, send the consumer a written notice containing—
>> (1) the amount of the debt;
>> (2) the name of the creditor to whom the debt is

owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

15 U.S.C. § 1692g(a) (emphasis added).

Defendant denies violating the FDCPA, claiming that Form Letter was not an "initial communication" sent "in connection with the collection of a debt." Defendant asserts that its FDCPA notice obligations were not triggered by the Form Letter and it is therefore not liable to Plaintiff for violating the FDCPA. In support of its position, Defendant claims that the FCCPA—a state statute—requires it to send notice on behalf of its client, Midland Funding, to consumers regarding the assignment of the debt, seemingly with only a portion of the FDCPA's "mini-Miranda" and validation of debt requirements included therein. (Pl.'s Amend. Class Compl., Exhibit A). Defendant offers no explanation, however, why or how a state statute can require it to only partially disclose portions of long-standing, federally-required consumer debt collection notices, while at the same time permit it to unilaterally determine which other required notices it can exclude from the same initial communication sent in connection with the collection of the Debt. In other words, if the Form Letter was not an initial communication sent in connection with the collection of the Debt, why would a portion of the required FDCPA notices be included? Or perhaps more importantly, *how* could a portion of the FDCPA notices be included in the Form Letter without the Plaintiff, judged under the least

sophisticated consumer standard, drawing the logical conclusion that the Form Letter was sent in connection with the collection of the Debt?[5]  To conclude that the Form Letter was not sent in connection with the collection of the Debt would not only be illogical, but almost altogether impossible.

If, as the Defendant suggests, Section 559.715 of the FCCPA required a 30-day "cooling-off" period before any assignee can bill and collect the debt—which it does not—Defendant's position and argument would be far better taken if the Form Letter did only that: provided Plaintiff notice of assignment and nothing more.  Defendant's Form Letter, however, goes much farther, offering Plaintiff a litany of other information about the Debt[6], clearly bringing the Form Letter squarely within the FDCPA's unambiguous definition of an initial communication sent in connection with the collection of a debt.

Defendant's stronghold position, that because Defendant's Form Letter did not make a demand for payment it cannot qualify as an initial communication sent in connection with the collection of a debt, contradicts both common sense and United States Supreme Court precedence that requires the FDCPA be read in ordinary English and be given plain meaning. *See Heintz* 514 U.S. at 294, 297.  And even if ambiguity could somehow sneak into this otherwise clear, straightforward definition and application of the FDCPA, as the Eleventh Circuit made abundantly clear in *Jeter*, this Court should interpret any such ambiguity in a

---

[5] Of note, is the fact that the letter itself was sent by the Defendant debt collector and *not* by the assignee, Midland Funding.  (Pl.'s Amend. Class Compl., Exhibit A).  The Form Letter explains that Midland Funding acquired Plaintiff's Debt but that all future communication should be with Defendant Midland Credit Management.  *See Id.*  Seeing that the entity which acquired her Debt had already referred all communication activities to its collection company, the least sophisticated consumer would naturally think that the communication was being sent in connection with the collection of a debt.  Thus, Defendant's argument would be more persuasive if Midland Funding had sent Plaintiff the initial communication.

[6] The Form Letter includes portions of FDCPA-required notices, namely that the communication is from a debt collector, the original creditor, the amount due, the current owner, as well as the debt collector's address and statements directing all further communication be sent to Defendant.

10

direction that supports these particular FDCPA subsections' purposes: to clearly and completely provide Plaintiff notice of her mini-Miranda and validation rights early on in her relationship with the Defendant.  To find otherwise would expose Plaintiff to the very harms the FDCPA is intended to erase.

In short, the Form Letter was Defendant's initial communication sent to the Plaintiff in connection with the collection of the Debt and was sent in clear violation of the FDCPA. Defendant's Motion to Dismiss must be denied.

**A.     Under the FDCPA, Defendant's Form Letter is an "Initial Communication" Sent "In Connection with Collection of a Debt."**

**i.     The Form Letter is an Initial Communication.**

The word "initial" is not defined by the FDPCA.[7]  Black's Law Dictionary, however, defines "initial" as "that which begins or stands at the beginning."   Black's Law Dictionary 783 (Henry Campbell Black, M.A., 6th ed., West 1990).   Merriam-Webster's Dictionary similarly defines "initial" as "of or relating to the beginning."   Merriam-Webster's New Collegiate Dictionary 435 (7th ed., Merriam-Webster 1967).   The FDCPA does, however, define the word "communication" as "the conveying of information regarding a debt directly or indirectly through any person through any medium."  15 U.S.C. § 1692a(2).

In support of its position that the Form Letter is not an "initial communication" under the FDCPA, Defendant cites a series of cases, none from this District or Circuit.  In two of the cases cited by Defendant, *Geiger v. Creditors Interchange,* 59 Fed. Appx. 803, 804 (6th Cir. 2003) and *Francis v. GMAC Mortgage,* No.06-CV-15771DT, 2007 WL 1648884, at *6 (E.D. Mich. June 6, 2007), the courts held that letters from debt collectors were not initial

---

[7] *Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1246 (11th Cir. 2008) ("When statutory terms are undefined, we typically infer that Congress intended them to have their common and ordinary meaning.").

communications in connection a debt because the correspondence was in response to inquiries made by the debtors.

In this case, it is undisputed that Defendant's letter, which directly concerned the Debt, was the first communication—letter, call or otherwise—received from the Defendant.[8] The Form Letter was not responsive to Plaintiff's prior communication. Further, the Form Letter conveyed facts, data and information (i.e., original creditor, balance owed; current owner; address to send inquiries to regarding the Debt in future, etc.) to the Plaintiff regarding the Debt, evidencing its status as an initial communication sent in connection with collection of a debt. *See Foti v. NCO Systems, Inc.,* 424 F. Supp. 2d 643 (S.D.N.Y. 2006) (holding that a debt collector's voicemail messages were communications under the FDCPA and that a narrowing construction of the FDCPA term "communication" would be at odds with the plain language defining that term; furthermore, exempting such voicemail messages from the definition of "communication" would undermine the purpose of section 1692e(11)); *Belin v. Litton Loan Servicing,* No. 8:06-cv-760-T-24-EAJ, 2006 WL 1992410, at *4-5 (M.D. Fla. July 14, 2006) (finding that voicemail messages left on a consumer's answering machine qualified as "communications" regarding the debt for § 1692e(11) purposes despite not directly divulging information regarding the debt; any information shared, the purpose of which was to induce a return communication by the consumer, was enough to qualify the voicemails as communications under the FDCPA).

As such, consistent with the FDCPA's plain, unambiguous definition, interpreted broadly and consistent with the statute's purpose, the Form Letter qualifies as a communication under Section 1692a(2) of the FDCPA.

---

[8] *See* Defendant's Motion at 4, along with Defendant's flawed argument that Florida law required it to send the December 2010 Letter prior to engaging in any other collection activities.

ii.     **The Form Letter was Sent "In Connection with Collection of a Debt."**

Similarly, "in connection" is not expressly defined by the FDCPA.  Black's Law Dictionary defines "connection" as "the state of being connected or joined . . . by dependence or relation, or by order in a series."  The predicate communication needed to trigger required consumer notices under the § 1692e(11) and § 1692g  is not a debt collection communication, but rather a communication *in connection* with collection of a debt.  Congress could have chosen the former, but instead consciously drafted the latter.  In plain English and interpreted expansively with the FDCPA's purpose in mind, the latter reads broader than a debt collection communication, especially when viewed through the eyes of a least sophisticated debtor.  Further, it is widely accepted across Circuits that a communication does not need to contain a demand for payment to qualify as a "communication in connection with the collection of a debt" to trigger a consumer's § 1692e and § 1692g rights.

In *Gburek v. Litton Loan Servicing, LP,* 614 F.3d 380, 381 (7th Cir. 2010) plaintiff's mortgage loan servicer and its debt collector sent plaintiff letters offering to discuss ways to avoid losing her home and asking for certain financial information.  Plaintiff responded, alleging on behalf of a class, that the letters failed to include certain notices required by FDCPA.  *Id* at. 383.  Defendant Litton moved to dismiss the class action, contending that the letters were not communications sent "in connection with the collection of a debt" because the letters did not contain an express demand for payment.  *Id*.  The trial court, relying on *Bailey v. Security National Servicing Corp,* 154 F.3d 384.[9] dismissed plaintiff's claims.  *Id*.  On appeal, however, the Seventh Circuit reversed and remanded, retreating from its previous rule of law

---

[9] *Bailey* is a case primarily cited in Defendant's Motion to Dismiss, standing for the proposition that a demand for payment is required for a communication to be sent in connection with the collection of a debt. (Def. Mot.  Dismiss at 11 – 12).

that a communication is in connection with the collection of a debt only if it explicitly demands payment, and in its place laid out "several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of a debt." Specifically, the nature of the parties' relationship, the purpose, and the context of the communications—viewed objectively—are important factors as well. The Seventh Circuit concluded that it was a mistake for the trial court to dismiss the complaint on the sole ground that the communications did not explicitly demand payment.

In the instant case, as previously suggested, the absence of an explicit demand for payment fails to "disconnect" the Form Letter from being in connection with the collection of a debt. The Parties relationship and context in which the Form Letter was sent makes the Parties' future relationship and the over-arching purpose of the communication clear: debt collection. Defendant is a debt collector on an unsecured debt. Midland Funding, the assignee, chose to outsource is Florida noticing requirements to Defendant, and authorized it to place portions of the FDCPA mini-Miranda and validation notices in the Form Letter. The Defendant also chose to provide its address in the Form Letter, as well as advise Plaintiff of the original creditor's identity and the balance due, and further advise Plaintiff, amongst other things, that all inquiries and future payments should be directed to Defendant. Lack of an explicit demand for payment does not exclude a communication's status as being in connection with collection of a debt, particularly when you consider the relationship of the Parties, and the purpose and context of the communication.[10] The Form Letter, viewed objectively and in plain English, while keeping

---

[10] *See Edwards v. Niagara Credit Solutions, Inc.,* 584 F.3d 1350 (11th Cir. 2009). (This Circuit interprets "communication" broadly; even though there was no specific demand for payment, voicemails were still a communication under § 1692e(11)); *Allen ex. rel Martin v. LaSalle Bank, N.A.,* 629 F. 3d 364 (3d Cir. Jan 12, 2011) (conveying information regarding debt not limited to specific requests for payment); *Romaine v. Diversified Collections Services, Inc.,* 155 F.3d 1142 (9th Cir. 1998) (Western Union's personal telegram "ruse" to gain and/or verify consumers' contact information—which was part of a plan to in turn sell consumers' information to debt

the FDCPA's purpose in mind, is a communication sent in connection with the collection of a debt.

### B. A Proper Interpretation of Section 559.715 of the FCCPA Reveals that it is in Harmony with the Unambiguous, Plain Meaning of Sections 1692e(11) and 1692g(a) of the FDCPA

A review of legislative history, statute statutes and case law, reveals that Defendant's interpretation of Section 559.715 of the FCCPA is clearly incorrect. Accepting Defendant's flawed and unsupported interpretation would create both a conflict and an inconsistency between the FCCPA and the FDCPA. Further, even if Defendant's interpretation was accurate, federal and state law would require the Court to provide the consumer the greater protections of the FDCPA through an expansive, harmonious interpretation of the statutes.

#### i. Section 715 of the FCCPA is a Perfection Statute and Does Not Create a "Cooling-Off" Period as Defendant Suggests.

Florida Statute, Section 559.715, was created as, and has always been interpreted by the courts as, a perfection statute, the compliance with which gives an assignee standing to be a real party in interest in a legal action to enforce the debt. Fla. Stat. 559.715 (2009).[11] As more specifically discussed below, a review and analysis of Florida Statute, Section 559.715's legislative history supports this position, including history up through the most recent amendment in 2010.

Defendant's suggested interpretation is not only completely unsupported by any legal authority, it also goes against a plain meaning, ordinary English interpretation of the FDCPA

---

collectors—was held to be a communication in connection with the collection of a debt notwithstanding no explicit reference to the debt and having no demand for payment.)

[11] *See Asset Acceptance v. Boyer,* Case No. 10-21719-CONS (Co. Ct., 7th Jud. Cir. in and for Volusia Co. Dec. 13, 2011) (holding that assignee of a consumer debt, having failed to offer any evidence of the condition precedent requiring notice of assignment to consumer within 30 days of the transfer of the debt, lacks standing and the court lacks the jurisdiction to award assignee any relief whatsoever; case dismissed *without* leave to amend) (emphasis added); *Equable Ascent Financial, LLC v. Davis,* Case No. 2011-CC-013899-O (Co. Ct., 9th Jud. Cir. In and for Orange Co. March 27, 2012) (assignees must notify consumer within 30 days from the date of the debt being assigned; failure to do so results in dismissal of case with prejudice).

and tries to inelegantly and incorrectly exclude an FCCPA notice of assignment of debt from the scope of the FDCPA's definition of an "initial communication in connection with the collection of a debt." Such interpretation is contrary to Supreme Court precedent, contrary to nearly 25 years of Florida consumer debt collection jurisprudence, and creates a slippery slope of litigation giving each future consumer who does not receive their FDCPA mini-Miranda warning and debt validation notice in conjunction with their FCCPA notice of assignment (or within five days thereafter) the basis for a potential cause of action for violation of the FDCPA. Furthermore, and perhaps most importantly, it is inconceivable that the Florida Legislature would move such mountains, namely creating a new, never before discussed "cooling-off" period for any debt collection (i.e., billing and collecting) regarding an assigned debt, without so much as a single word of foreshadowing or explanation.

Prior to 2010, Section 559.715 of the FCCPA stated:

> This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt.  However, the assignee must give the debtor written notice of such assignment within 30 days after the assignment.  The assignee is a real party in interest and may bring an action in a court of competent jurisdiction to collect a debt that has been assigned to such assignee and is in default.

Fla. Stat. Sec. 559.715 (1993).[12] [13]

In 2010, Section 559.715 was changed to the following, current version:

> However, the assignee must give the debtor written notice of such assignment **as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt**.  The assignee is a real party in interest and may bring an

---

[12] This Section was first enacted in 1989; however, the 1993 revision changed the word "claim" to the word "debt" and also made the statute gender-neutral by replacing "him" with "the assignee."  *See* Fla. Stat. Sec. 559.715 (1989).

[13] This version of the Statute was derived from Florida Senate Bill 196 and  Florida House Bill 1566.  In its 1993 Journal, the Florida House of Representatives explained that Section 559, "provid[ed] procedure for communication to debtor," and "provid[ed] requirements for *legal suits* against the debtor."  Fla. H. J. Reg. Sess. 95 at 112 (emphasis added).

              action to collect a debt that has been assigned to the assignee
              and is in default.

Fla. Stat. Sec. 559.715 (effective Oct. 1, 2010) (emphasis added to indicate the changed language).

      The 2010 change to Section 559.715 merely changed the timing of the required notice of assignment from 30 days after the assignment was made to 30 days prior to the debt collector brining an action in court against a consumer.  This change was undertaken to cure the unfair, almost draconian, results that effectively prohibited assignees of consumer debts from access to the Florida courts to file an *action* to collect such debts if they inadvertently and untimely provided the consumer notice of such assignment.[14]  *See also Asset Acceptance,* Case No. 10-21719-CONS;  *Equable.*  Case No. 2011-CC-013899-O.  The Florida Legislature did not accidentally, without any explanation whatsoever, make perhaps the most sweeping change in Florida consumer debt collection history by casually adding a twentieth "prohibited practice"[15] to the FCCPA that prohibits the collection of any assigned debt for 30 days from the date the consumer is provided notice of such assignment.  Interpreting Section 559.715 to create a "cooling-off" period begs the question, what good such supposed "cooling-off" period provide consumers, assignees and the Florida courts?  Almost nothing, save another month of accrued interest and late fees for an already cash-strapped consumer; consumer anxiety for not knowing what to do for thirty days; erosion of long-standing, well-settled FDCPA consumer protections provided via timely, complete notice of rights; and potential time-value of money

---

[14] The Florida House, in its 1989 Journal, summarized HB 1566 as a bill relating to the "assignment right to bill and collect," and stated that the "debtor" be given "written notice of intent to bring *civil action*."  Fla. H. J., Reg. Sess. 91 at 1745 (emphasis added).  Thus, the Florida House in 1989 expressed its intent to separate a debt collector's ability to "bill and collect" from its ability to bring a "civil action" against a consumer.  *Id.*  The Florida House Journal's summary specifically indicates that, under HB 1566, the period before which a debt collector may take *action* against a consumer indicates "civil action," not other actions such as the debt collector's ability to "bill and collect."  (emphasis added)  *Id.*

[15] Florida Statute, Section 559.72 (1)–(19).

loss for an assignee that could have collected the monies owed sooner had it congruently provided the FDCPA and FCCPA notices in question. Such interpretation does not make sense. In short, plain meaning, legislative history and intent (or complete lack thereof), and contextual common sense all go against Defendant's "cooling-off" period interpretation of Florida Statute, Section 559.715 (2010).

Understood in conjunction with the Florida legislature's efforts to ameliorate the harshness of dismissal of claims with prejudice due to assignees' incurable lack of standing, and the Florida legislature's history of distinguishing between a creditor's ability to assign a debt to an assignee for collection from a consumer and the requirements that will determine an assignee's standing in a debt collection suit against a consumer, the 2010 modification of Section 559.715 is simply a modification to the required time frame regulating an assignee's notice of assignment, which corresponds to an assignee's standing in a potential future debt collection action against a consumer.

The Florida legislature did not alter an assignee's ability to "bill and collect a consumer debt," but simply created a time frame for notification that was more amenable to assignees who could potentially have causes of action against consumers for debt collection in multiple states. If the Florida legislature intended a sweeping change to assignees' rights to collect debt in Florida, as alleged, it seems unlikely that it would leave the portion of Section 559.715 regulating these very abilities was unchanged.

ii.     **Defendant's Interpretation of Section 559.715 Does Not, and Cannot, Exempt Defendant from Complying with the FDCPA.**

As explained above, Defendant's suggestion that Section 559.715 creates a "cooling-off period" for the billing and collection of an assigned debt after an assignment is made, if true, creates a conflict and an inconsistency between the FCCPA and the FDCPA. On one

hand, the FDCPA requires specific disclosures to the consumer in the initial communication from the debt collector.  On the other hand, applying Defendant's reasoning, Section 559.715 of the FCCPA prohibits the disclosures referenced in the FDCPA in the initial communication from the debt collector.[16]

When statutory interpretation creates a conflict between the FCCPA and the FDCPA, such as that created by Defendant's suggested interpretation of Section 559.715, the only reasonable interpretation is one that acknowledges the Florida legislature's intent that the FCCPA be read as providing regulations that complement the FDCPA." *Bianchi v. Bronson & Miglicaccio,* LLP, No. 00-61164-CIV, 2011 WL 379115, at *2 (S.D. Fla. Feb. 2, 2011).[17] Defendant's belief that Section 559.715 of the FCCPA prohibits debt collectors from informing consumers in an initial communication that the collector is seeking to collect a debt, that any information obtained would be used for that purpose and that the consumer has the ability to dispute the validity of the debt directly conflicts with the FDCPA's plain, unambiguous mandate that an initial communication provide such information.  15 U.S.C. § 1692g(a) (2010). For this reason, Defendant's interpretation must be rejected.  The true meaning of Section 559.715, which is that of a perfection statute requiring certain disclosures prior to a debt collector filing suit, must be favored since it complements the FDCPA's disclosure requirements.

Florida law makes clear that where there exists "any inconsistency between [the FCCPA and the FDCPA], the provision which is more protective of the consumer or debtor

---

[16] This is because Defendant's interpretation of Section 559.715 prohibits Defendant from stating in its initial communication that it is attempting to collect a debt since an assignee allegedly cannot collect a debt until thirty days after providing notice that the debt has been assigned.

[17] Explaining that "[t]he Florida legislature through the FCCPA expresses its intent that the FCCPA be read as providing regulations that complement the FDCPA."  2011 WL 279115, at FN3 (citing Fla. Stat. 559.22).

shall prevail."  Fla. Stat. Sec. 559.552.  Defendant's Motion is completely devoid of any explanation as to how precluding collection activities until thirty days after informing a debtor that a debt has been assigned provides any protection  whatsoever to the consumer.  To the contrary, as explained above, the disclosures mandated by the FDCPA in a debt collector's initial communication are intended to protect the consumer.  These notices let the consumer know that information they share with debt collectors can be used against them.  Early notice of these rights also allows consumers to quickly resolve cases of mistaken identity with the debt collector.  Additionally, these notices allow consumers to get accurate accountings of amounts allegedly due to insure they do not over-pay or double pay debts being collected by debt collectors.  Applying the clear mandate of Section 559.552, the FDCPA's provisions requiring disclosure of critical information to the consumer must prevail over a state statute that would do away with these FDCPA's requirements.

Finally, under federal law, Section 559.715 of the FCCPA is preempted to the extent that it is in conflict with the unambiguous, plain meaning of Sections 1692e(11) and 1692g(a) of the FDCPA.  *See English v. General Electric Co.,* 496 U.S. 72, 78-79 (1990); 15 U.S.C. § 1692n.

## IV.   <u>CONCLUSION</u>

Plaintiffs have asserted a plain, straightforward statement of facts that support a claim for which relief can be granted under the FDCPA.  Plaintiff's Amended Class Complaint, which states a claim for relief that is plausible on its face, is supported by facts, and thus must survive Defendant's Dispositive Motion to Dismiss Plaintiff's Amended Class Complaint.  As such, Defendant's Motion to Dismiss should be denied.  Pursuant to Local Rule 3.01(j) Plaintiff further requests oral argument. Plaintiff believes one hour will be required for argument.

Respectfully Submitted,

**LEAVENGOOD, NASH, DAUVAL &
BOYLE, P.A.**

___/s/ Ian Leavengood_____
**Ian R. Leavengood, Esq., FBN 0010167**
**LEAD TRIAL COUNSEL**
**Christopher C. Nash, Esq., FBN 0135046**
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
Attorneys for Plaintiffs

and

**JAMES, HOYER, NEWCOMER &
SMILIJANICH, P.A.**

**Nicole C. Mayer, Esq., FBN 0012035**
**Christopher Casper, Esq., FBN 048320**
4830 West Kennedy Blvd.,
Suite 550
Tampa, FL 33609
Phone: (813) 397-2300
Fax: (813) 397-2310
nmayer@jameshoyer.com
ccasper@jameshoyer.com
*Attorneys for Parker and Class Members*

## CERTIFICATE OF SERVICE

I certify that the foregoing *Response in Opposition to Defendant's Dispositive Motion to Dismiss Plaintiff's Amended Class Complaint and incorporated Memorandum of Law* was served either electronically or via U.S. Mail on this 29th day of May 2012 to:

John Anthony Love, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309
Counsel for Defendant

James B. Thompson, Esq.
Thompson Goodis et al, PA
700 Central Avenue, Fifth Floor
St. Petersburg, FL 33701

Counsel for Defendant


_____/s/ Ian R. Leavengood_____
ATTORNEY