# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**BELINDA PARKER,**
**on behalf of herself and all others,**
**similarly situated,**

> **Plaintiff,**

**v.**                                        **Case No.  8:12-cv-110-T-30TBM**

**MIDLAND CREDIT MANAGEMENT,**
**INC.,**

> **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Dispositive Motion to Dismiss Plaintiff's Amended Class Complaint (Dkt. 26), Plaintiff's Response in opposition (Dkt. 30), and Defendant's Reply (Dkt. 35).  The Court, having considered the motion, response, reply, and being otherwise advised of the premises, concludes that the motion should be granted because the December 2010 letter sent to Plaintiff was <u>not</u> sent in connection with the collection of a debt as prohibited by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*

## BACKGROUND

This case centers around a letter sent on or about December 16, 2010, from Midland Funding LLC ("Midland Funding") to Plaintiff Belinda Parker with respect to Plaintiff's credit account with Capital One.  The letter, attached to Plaintiff's amended complaint as

Exhibit A, reflected in the top right-hand corner that Midland Funding LLC was the "Current Owner", Capital One was the "Original Creditor", the "Original Account No", the "MCM Account No." and a current balance of $28,458.11.  The body of the letter stated:

> The purpose of this letter is to advise you that Midland Funding LLC is the new owner of the above-referenced account, and Midland Credit Management, Inc. ("MCM"), a debt collection company, is now the servicer of this obligation.  Midland Funding LLC received an assignment of your account with the above-listed original creditor. Accordingly, all future communication regarding the account should be addressed to MCM as servicer for Midland Funding LLC and not the previous owner.  No collection efforts will occur on this account for at least 30 days from the date of this notice.
>
> If an attorney represents you with regard to this debt, please refer this letter to your attorney.  Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.
>
> Midland Credit Management, Inc.
> 8875 Aero Drive, Suite 200
> San Diego, CA 92123
>
> IMPORTANT DISCLOSURE INFORMATION
>
> Although this communication is from a debt collector, this is not an attempt to collect a debt.

(Dkt. 22-1).[1]

---

[1] Because the letter is attached as an exhibit to the amended complaint, it may be treated as part of the complaint for Rule 12(b)(6) purposes.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

Plaintiff filed the instant action, alleging that the letter violated the FDCPA, particularly section 1692e(11) and section 1692g(a).  Specifically, Plaintiff alleges that the letter failed to advise Plaintiff of a portion of her "mini-Miranda" rights under section 1692e(11), namely that the letter was an attempt to collect the debt and that any information obtained by Defendant would be used for that purpose.  Furthermore, Plaintiff alleges that Defendant failed to notify her of her complete validation rights in either the letter or in a subsequent written communication sent to Plaintiff within five days of the letter, as required under section 1692g(a).

Defendant moves to dismiss Plaintiff's amended complaint because it contends that the letter, as a matter of law, did not violate the FDCPA because the Florida Consumer Collection Practices Act ("FCCPA") expressly required the letter.[2]  Defendant also argues that the letter was not a communication "in connection with the collection of a debt" as required to trigger obligations under sections 1692e(11) and 1692g(a).

The Court concludes that, as a matter of law, the letter did not constitute communication in connection with the collection of a debt.

## <u>MOTION TO DISMISS STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the

---

[2] As discussed in more detail below, the FCCPA contains a provision that addresses the ability of assignees of accounts, such as Midland Funding, to collect on accounts.

complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations." *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I.    The FDCPA

The FDCPA generally prohibits "debt collectors" from engaging in abusive, deceptive, or unfair debt-collection practices. 15 U.S.C. § 1692 *et seq.*  Its purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Among other things, the FDCPA regulates when and where a debt collector may communicate with a debtor, restricts whom a debt collector may contact regarding a debt, prohibits the use of harassing, oppressive, or abusive measures to collect a debt, and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt.

For the FDCPA to apply, however, two threshold criteria must be met.  First, the defendant must qualify as a "debt collector," an issue which is not disputed here.  The parties

agree that Defendant is a "debt collector" under the statute.  Second, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt."

## II.    Defendant's Argument with Respect to the FCCPA

Defendant's motion to dismiss argues that the December 2010 letter was not made in connection with the collection of any debt because Defendant was required to send the letter under the FCCPA, specifically Fla. Stat. § 559.715, which states:

> This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt.  However, *the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt.*  The assignee is a real party in interest and may bring an action to collect a debt that has been assigned to the assignee and is in default.

(emphasis added).  Defendant argues that the letter served as the notice required under section 559.715, informing Plaintiff that it was assigned the debt, providing Plaintiff with the new account information, and notifying Plaintiff that collection efforts would not occur on the account for at least thirty days.

The parties are in agreement that the issue of whether a letter sent by a debt collector under section 559.715 can violate the FDCPA is a matter of first impression.  The parties' generous attention on section 559.715, however, is misplaced.  This focus stems from Defendant's argument that it cannot comply with both the FCCPA and the FDCPA. This argument is flawed for two reasons.  First, it assumes that a debt collector could not send a

letter that complies with both the FCCPA and the FDCPA.  Second, it assumes that the letter sent in this case could not have dual purposes.

The Eleventh Circuit recently stated that a letter sent to enforce a security interest under Georgia law could also relate to the collection of a debt within the meaning of section 1692e.  *See Reese v. Ellis, Painter, Ratterree & Adams, LLP,* --- F.3d ----, 2012 WL 1500108, at *4-5 (11th Cir. May 1, 2012).  The Eleventh Circuit noted that a contrary holding would exempt from the provisions of section 1692e any communication that attempted to enforce a security interest regardless of whether it also attempted to collect the underlying debt and would result in a "big" loophole in the FDCPA.  *Id.*; *see also Stricklin v. Jefferson Capital Sys., LLC*, 2011 WL 5325735, at *6 -7 (S.D. Ill. Nov. 3, 2011) (noting that the fact that defendant's letter was a "privacy notice" required of financial institutions under the Gramm–Leach–Bliley Act (GLBA), 15 U.S.C. § 6801 *et seq.*, did not, as a matter of law, eliminate its status as a communication made in connection with debt collection under the FDCPA).

Thus, the appropriate inquiry here is simply whether the letter, regardless of whether it was sent in compliance with section 559.715, was made in connection with the collection of Plaintiff's debt.  Defendant's request that the Court hold that the letter's compliance with section 559.715 bars Plaintiff's claims as a matter of law would potentially create a loophole in the FDCPA for letters sent from debt collectors to debtors, purportedly premised on the notice requirement of section 559.715.

III.     **Was the December 2010 Letter an Initial Communication with Respect to the Collection of Plaintiff's Debt under the FDCPA?**

The parties agree that the least sophisticated debtor standard applies when evaluating FDCPA claims.  *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).  The parties also agree that this standard is an objective test designed to protect the vulnerable while preventing "liability for bizarre or idiosyncratic interpretations of collection notices."  *Id.*

Neither the Eleventh Circuit nor any other circuit has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt.  Most district courts analyzing this issue rely on several decisions from the Seventh Circuit for guidance with respect to the relevant factors.

In *Bailey v. Security National Servicing Corp.,* 154 F.3d 384 (7th Cir. 1998), a case relied upon by Defendant, a mortgage servicer sent a letter to a delinquent debtor listing its next payments due to the original creditor.  The letter expressed a willingness to "work with" the debtor in resolution of its delinquency.  *Id.* at 386.  In affirming the district court's grant of summary judgment to the debt collector defendants, the Seventh Circuit held that the letter did not qualify as a communication in connection with debt collection.  The fact that the letter did not demand payment and did not otherwise attempt to collect the debt, despite its warning that delinquent payment could trigger an obligation to pay the entirety of the loan immediately, were determinative to the court's holding.  The court deemed the letter a mere

description of the status of the debtor's account. *Id.* at 388–89. Thus, *Bailey* demonstrates that the FDCPA does not apply to every communication between a debt collector and debtor.

The Seventh Circuit later clarified that the absence of a demand for payment is not dispositive of whether the debt collector made the communication in connection to the collection of a debt. *See Horkey v. J.V.D.B. & Assoc., Inc.,* 333 F.3d 769 (7th Cir.2003). In *Horkey,* in concluding that the FDCPA applied to a phone call from the defendant, the court looked to the caller's intent. Although the caller made no demand for payment, the debt collector specifically intended the call to induce the debtor to settle her debt, which triggered the FDCPA. *Id.* at 774.

Most recently, in *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380 (7th Cir. 2010), a case relied upon by Plaintiff, the Seventh Circuit stressed again that a demand for payment is not in itself determinative of whether a debt collector made a communication in connection to debt collection. The debtor at issue was in default on her mortgage loan. The loan servicer sent her three letters offering to discuss "foreclosure alternatives" and asking for financial information to initiate this process. In reversing the district court's grant of the loan servicer defendant's motion to dismiss, the *Gburek* court determined that the defendant made numerous communications with the debtor in connection with debt collection because it intended the communications to cause the debtor to settle or discuss the debt. *Id.* at 384–86. Thus, the Seventh Circuit has emphasized the relationship of the parties, the intent of the communication, as well as whether there was a demand for payment, as factors to consider when determining whether a communication falls within the scope of the FDCPA.

The Sixth Circuit recently issued the *Grden* decision, which also expands upon this inquiry. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The Sixth Circuit "agree[d] with the Seventh Circuit that an 'explicit demand for payment' is not always necessary for the statute to apply" and "the statute does not apply to *every* communication between a debt collector and a debtor." *Id.* (emphasis in original) (citing *Gburek*, 614 F.3d at 385). The question was where to draw the line. *Id.* The Sixth Circuit then explained:

> We draw it at the same place the Seventh Circuit did in *Gburek:* for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. *See id.* at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. *See, e.g., id.* at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection.

643 F.3d at 173.

Several district court cases are also instructive on this issue. In *South v. Midwestern Audit Services, Inc.*, 2010 WL 5088765, at *5-6 (E.D. Mich. Aug. 12, 2010), the district court held that the purpose of a letter from a debt collector to the plaintiff was to inform the plaintiff that a previous debt would be transferred to her current account. The court concluded that even if the debt collector's ultimate goal in sending the transfer letter was to ensure the ultimate payment of the debt, this did not alter the nature of the letter from one

providing notification to one attempting to collect a debt.  In other words, the letter was merely informational; it informed the plaintiff about the transfer of her debt.  Importantly, the court noted that "[o]ther courts have also recently recognized that 'the language used in the communication is important in determining whether it was sent in connection with the collection of a debt.'"  *Id.* at *5 (citing *Thompson v. BAC Home Loans Servicing, L.P.*, 2010 WL 1286747, at *4 (N.D. Ind. March 26, 2010)); *see also Mabbitt v. Midwestern Audit Serv., Inc.,* 2008 WL 723507 (E.D. Mich. Mar.17, 2008) (finding that a letter notifying a customer that her outstanding balance had been transferred to her new account for her "convenience in making payment" did not contain language that she was "required to pay the debt" and thus was not communication in connection with the collection of any debt).

In *Gillespie v. Chase Home Finance, LLC,* 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009)*,* the district court held that letters sent to mortgagees who were in default were informational letters and not an attempt to collect a debt, and therefore, not in violation of the FDCPA.  The *Gillespie* letter, unlike the letter in the present case*,* also advised the debtor that he or she had several ways to resolve his or her delinquencies and should contact Chase's Homeowner's Assistance Department "immediately" in order to help all parties come to a resolution.  *Id.* at *2.  The court held that the letter at issue was not in violation of the FDCPA because it did not "provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form."  *Id.* at *5.

In light of the factors discussed above, the Court concludes, as a matter of law, that the December 2010 letter is not a communication in connection with debt collection.  The

letter did not demand payment or discuss specifics of the underlying debt.  And the purpose of the letter was to inform Plaintiff of the assignment of the account to Defendant.  Indeed, the letter even states that "this is not an attempt to collect a debt."  (Dkt. 22-1).  And, although the balance of the debt is stated, the letter does not include terms of payment or deadlines.  On its face, it is clearly informational; it informs Plaintiff that her account has been assigned to Defendant and includes the new account number and Defendant's contact information.

In sum, these facts, taken from the amended complaint and the letter itself, demonstrate, as a matter of law, that the letter was not sent in connection with collection of a debt.  Any other conclusion would defy logic and place debt collectors in an untenable position, where they are subjected to lawsuits, despite their best efforts.

The Court would like to see a bright-line rule adopted by the Circuits on this issue, so that cases like the instant case are prevented in the future.  A letter, such as the one at issue here, that merely informs a debtor of the assignment of her debt, provides the debtor with the new information, and clearly states that the letter is not an attempt to collect a debt should stand as an example of a letter that does not constitute a communication in connection with the collection of a debt in violation of the FDCPA.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant's Dispositive Motion to Dismiss Plaintiff's Amended Class Complaint (Dkt. 26) is GRANTED.

2.      This case is dismissed with prejudice.

3.     The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on June 15, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-110.mtdismiss26.frm